UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ORLANDO VALERIO,

                        Plaintiff,                    **REPORT & RECOMMENDATION**
                                                                **19 CV 593 (MKB)(LB)**

    -against-

K.A.M. FOOD STORE, INC. *doing business
as Met Foods*, MAHMOUD HASSAN DOLAH,
KHALID DOLAH, and AMIN DOLAH,

                        Defendants.
-------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

        Plaintiff Orlando Valerio brings this civil action against K.A.M. Food Store, Inc., doing business as Met Foods ("K.A.M."), Mahmoud Hassan Dolah ("Mahmoud"), Khalid Dolah ("Khalid"), and Amin Dolah ("Amin"), collectively "defendants," alleging that they violated his rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 195–98 ("NYLL"). Despite proper service of the summons and complaint, ECF Nos. 10–14, defendants have failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment against defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 17, Motion for Default Judgment; ECF No. 17-1, Memorandum of Law ("Memo"). The Honorable Margo K. Brodie referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion should be granted as modified herein and that a default judgment should be entered against defendants in the amount of **$44,231.66** (comprised of $17,115.83 in unpaid overtime wages, $17,115.83 in liquidated damages, and $10,000.00 in statutory damages) plus interest. Plaintiff

should further be permitted to file a motion for attorney's fees and costs within fourteen days from the date the Court rules on this Report and Recommendation.

## BACKGROUND[1]

Defendant K.A.M. is a New York corporation that "is the corporate entity affiliated with the Met Foods grocery store located at 739 Nostrand Ave., Brooklyn, NY 11216." ECF No. 1, Plaintiff's Complaint ("Compl.") ¶¶ 5–7. Plaintiff alleges that K.A.M. was owned, controlled, and managed by defendants Khalid, Amin, and Mahmoud. Id. ¶¶ 11–29.

Plaintiff alleges that he was employed by defendants from around October 5, 2015 through May 3, 2018 as a "chicken cutter," and that he was responsible for packaging poultry at the store. Id. ¶¶ 31–32. Plaintiff alleges that during his approximately two-and-a-half years of employment, he worked Monday through Friday (with a half-day every other Wednesday) and every other Sunday. Id. ¶ 35. Plaintiff alleges that he worked 8:00 a.m. through 6:00 p.m. or 7:00 p.m., with a one-hour lunch break; in total, he worked approximately 46–48 hours per week. Id. ¶¶ 35–36. Plaintiff's allegations are supported by timecards for thirty-five weeks of his employment which show that in all but two weeks, he logged more than forty hours per week. Id. ¶ 36. Plaintiff alleges that he was paid "a flat amount per week," regardless of how many hours he actually worked. Id. ¶¶ 33, 35–36. Furthermore, plaintiff alleges that defendants failed to maintain accurate records and failed to give him written wage notices or pay stubs regarding his rate of pay. Id. ¶¶ 41, 51–54.

## PROCEDURAL HISTORY

Plaintiff commenced this action against defendants on January 30, 2019. ECF No. 1. Summonses were returned executed on defendants on March 19, 2019, April 3, 2019, and April 4,

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

2

2019.[2] ECF Nos. 10–14. When defendants failed to respond to plaintiff's complaint after being properly served, plaintiff requested and the Clerk of Court noted entry of the defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 16. On June 18, 2019, plaintiff moved for a default judgment against defendants pursuant to Rule 55(b)(2). ECF No. 17. Plaintiff's motion attaches plaintiff's declaration ("Valerio Decl."), ECF No. 17-10; timecards for plaintiff from late 2017–early 2018 ("Time Cards") and a corresponding spreadsheet ("Spreadsheet"), ECF Nos. 17-11 and 17-13; as well as plaintiff's counsel's declaration ("Dodson Decl."), ECF No. 17-12.

## DISCUSSION

### I. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162

---

[2] In an abundance of caution, plaintiff had K.A.M. served with process on two occasions. Memo at 3–4.

3

(S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

## II.   Liability

The FLSA provides that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and has employees that

4

engage in interstate commerce. 29 U.S.C. § 203(s)(1). In addition to the FLSA, plaintiff also seeks relief under the NYLL. With regard to state overtime wage claims, "the relevant portions [of the NYLL] do not diverge from the requirements of the FLSA," and thus the Court may analyze plaintiff's FLSA and NYLL claims in tandem. Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009) (citation omitted).

Here, plaintiff establishes that K.A.M. is an employer liable under the FLSA and the NYLL. Plaintiff alleges that K.A.M. is involved in interstate commerce and had gross sales exceeding $500,000, Compl. ¶¶ 8–9, that he was employed by K.A.M., id. ¶¶ 31–32, 35–36, and that he was not compensated for hours worked in excess of forty hours per week pursuant to the FLSA or the NYLL, id. ¶¶ 35–37, 42–45, 56–58. See also 29 U.S.C. § 203(s)(1)(A)(ii) (requiring gross revenues exceeding $500,000); NYLL § 651(5) (defining "employee").

Plaintiff likewise establishes Khalid, Amin, and Mahmoud's liability. Plaintiff alleges Mahmoud was the CEO and general manager of K.A.M. and that Khalid and Amin were managers. Compl. ¶¶ 12–13, 19, 26. Furthermore, plaintiff alleges that each individual defendant "had an ownership interest in [K.A.M.]," "actively participated in the business," "exercised substantial control over the functions of the company's employees," and "had the authority to hire, fire, discipline, set rates of pay for, direct the activities, and otherwise supervise" plaintiff. Id. ¶¶ 14–16, 20–22, 25–28; Valerio Decl. at 3. These factual allegations, accepted as true, establish Khalid, Amin, and Mahmoud's liability under both the FLSA and the NYLL. See Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013) (discussing "that "evidence showing [an individual's] authority over management, supervision, and oversight of [a company's] affairs in general" is relevant to determining the individual's "operational control" of the company); see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139–40 (2d Cir. 1999) ("Under the 'economic reality' test [used to

5

determine whether an individual is considered an employer under FLSA], the relevant factors [the Court considers] include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'") (citation omitted).

### III. Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

"Where an employer fails to maintain adequate or accurate records of its employees' hours, the employee need only produce[] sufficient evidence to show the amount and extent of [the uncompensated] work as a matter of just and reasonable inference." Salinas v. Starjem Rest. Corp., 132 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). An employee "may satisfy his burden through estimates based on his own recollection." Id. (citing

Kuebel v. Black and Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011)). A sworn declaration from plaintiff may provide a sufficient basis for the Court to determine damages. Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (discussing that an affidavit based on an employee's recollection is sufficient) (citing cases).

Here, plaintiff contends that defendants failed to comply with the FLSA's record-keeping requirements. Compl. ¶¶ 41, 51–55. Plaintiff submits a sworn declaration that he worked for defendants from approximately October 10, 2015 through Mar 3, 2018. Valerio Decl. at 1. He further declares that he regularly worked Monday through Friday (with every other Wednesday as a half-day) and every other Sunday, approximately ten to eleven hours per day (with a one-hour lunch break). Id. at 2. Plaintiff's sworn declaration also states that defendants paid him $425.00 per week when he started and gradually increased his pay to $550.00 per week as reflected in the Spreadsheet. Id. Accordingly, the Court may rely on plaintiff's declaration to determine his damages.

Plaintiff may recover unpaid compensation under the FLSA and the NYLL, but when the statutory periods of the FLSA and the NYLL overlap, plaintiff cannot recover under both statutes. Arnoldo Lopez Vasquez v. Lahori Kebab & Grill Corp., No. 18-cv-2117 (JS)(SIL), 2019 WL 4396724, at *6 (E.D.N.Y. Aug. 13, 2019) (explaining that a plaintiff may not simultaneously recover under both the FLSA and the NYLL for the same injury) (citing Ni v. Bat-Yam Food Servs. Inc., No. 1:13-cv-07274 (ALC)(JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016) (collecting cases)). Under the FLSA, the statute of limitations is two years. 29 U.S.C. § 255(a). However, upon a showing that an employer's violation of the FLSA was willful, however, the FLSA limitations period may be extended to three years. 29 U.S.C. § 255(a).

Plaintiff commenced this action on January 30, 2019 to recover damages for conduct that allegedly occurred between October 5, 2015 and May 3, 2018. Compl. ¶ 31, Valerio Decl. at 1. Plaintiff alleges his FLSA claims are subject to a two-year statute of limitations. Memo at 13. However, because defendants have failed to maintain adequate records and have defaulted in this case, plaintiff's FLSA claims are subject to the three-year statute of limitations for willful violations. Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 314–15 (S.D.N.Y. 2014) (discussing that defendants' failure to maintain adequate records and default in the case supported a finding of willfulness).

Under the NYLL, the statute of limitations is six years. See; NYLL § 663(3). Accordingly, the Court applies the six-year statute of limitations to plaintiff's NYLL claims.

A plaintiff may recover under the statute that provides the greater relief. Galeana, 120 F. Supp. 3d at 316–17 (citing cases). To this end, because the NYLL allows for greater recovery than the FLSA,[3] the Court concludes that damages calculations under the NYLL are appropriate.

### A. Unpaid Wages

Plaintiff seeks $4,942.64 in unpaid wages. Memo at 15. An employer is required to pay its employees at least the minimum wage for every hour worked pursuant to the FLSA and NYLL. 29 U.S.C. § 206; NYLL § 652(1). An employee's regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113. "There is a rebuttable assumption that a weekly salary covers 40 hours" and "the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." Giles v. City of New York, , 317 (S.D.N.Y. 1999); see also Lopic v. Mookyodong Yoojung Nakjie, Inc., No. 16-CV-4179 (KAM)(CLP), 2017 WL 10845064,

---

[3] See Part III. A., *infra*, (discussing how the minimum wage under NYLL was higher than under the FLSA for the duration of plaintiff's employment).

8

at *7 (E.D.N.Y. Sept. 30, 2017) (citing cases). Here, defendants failed to rebut this presumption by their default.[4]

As set forth in Table A, to determine any unpaid wages owed to plaintiff, the Court calculates plaintiff's regular hourly rate by dividing plaintiff's weekly pay (which varied between $425–$550, Valerio Decl. at 2; Spreadsheet) by 40 hours, Compl. ¶ 36, Memo at 14, Dodson Decl. at 3. The Court then compares plaintiff's regular hourly rate to the NYLL hourly minimum wage.[5] The Court then calculates the difference between plaintiff's regular hourly rate and the NYLL

---

[4] Plaintiff's Regular Hourly Rate = Plaintiff's Weekly Pay / 40 hours.

Some courts calculate plaintiff's regular hourly rate by dividing his weekly pay by the total hours worked while other courts apply a presumption that his weekly wages were paid for forty hours of work. Compare Hernandez v. Delta Deli Market Inc., No. 18-CV-00375 (ARR)(RER), 2019 WL 643735, at *6 (E.D.N.Y. Feb. 12, 2019), adopted by, Case No. 18-CV-00375, Electronic Order dated Mar. 4, 2019 (calculating plaintiff's hourly rate by dividing his weekly pay by the total number of hours he worked that week); Pichardo v. El Mismo Rincon Latino Corp., No. 17-CV-7439 (FB)(SJB), 2018 WL 4101844, at *4 (E.D.N.Y. Aug. 7, 2018), adopted by, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018) (same) with Pabello v. Carlton Cleaners, Case No. 11 Civ. 2267 (HBP), 2019 WL 4727495, at *3 (S.D.N.Y. Sept. 27, 2019) (calculating plaintiff's hourly rate by dividing his weekly pay by forty hours, even though he worked more than 40 hours that week) (citing cases); Lopic v. Mookyodong Yoojung Nakjie, Inc., No. 16-CV-4179 (KAM)(CLP), 2017 WL 10845064, at *6 (E.D.N.Y. Sept. 30, 2017) (same); see also Cazarez v. Atlantic Farm & Food Inc., No. 15 CV 2666 (CBA)(RML), 2017 WL 3701687, at *4 n.3 (E.D.N.Y. May 31, 2017), adopted by, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) (discussing the different methods courts employ to calculate plaintiff's regular hourly rate). Calculating plaintiff's regular hourly rate using the former method results in $201.60 in unpaid minimum wages as opposed to $0.00 using the second method. However, calculating plaintiff's regular hourly pay using the second method results in a higher hourly rate, and therefore a higher overtime rate. Plaintiff's counsel employs the second method to calculate plaintiff's damages. See Dodson Decl. at 3. Given that defendants are in default and have not rebutted plaintiff's calculation method, I recommend that the Court calculate plaintiff's regular hourly rate applying the presumption that his weekly wages were paid for forty hours of work.

[5] For the duration of plaintiff's employment, the federal minimum wage was $7.25. 29 U.S.C. § 206(a)(1)(C). By contrast, the applicable New York minimum wage was $8.75 in 2015, $9.00 in 2016, $10.50 in 2017, and $12.00 in 2018. NYLL § 652. As previously discussed, a plaintiff is entitled to recover actual damages under both federal and state wage and hour laws and the plaintiff may recover under the statute providing the greater damages. See Part III, supra; Galeana, 120 F. Supp. 3d at 316–17 (citing cases). Accordingly, as the hourly minimum wage under the NYLL was greater throughout plaintiff's employment, the Court compares plaintiff's hourly pay with the applicable NYLL minimum wage listed herein.

Plaintiff appears to have mistakenly calculated his unpaid minimum wages using the NYLL minimum wage rate designated for "large employers." Memo at 14–15; NYLL 652(1)(a). As plaintiff does not provide any information regarding the number of employees employed by defendants, the Court should apply the NYLL minimum wage for "small employers of ten or fewer employees" as set forth above instead of the rates applicable to "large employers." See Ortiz v. Red Hook Deli & Grocery 2015 Corp., No. 17-CV-7095 (RRM), 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019) ("In the absence of information as to the size of an employer's workforce, courts apply the rate for small employers.") (citations omitted).

9

hourly minimum wage. If plaintiff's regular hourly rate was below what the NYLL required, the Court calculates the damages owed to plaintiff by multiplying the difference in the pay rates by 40 hours (to obtain his unpaid minimum wages owed per week), and then multiplying that figure by the number of weeks plaintiff worked in each period.

**Table A**

| Period | No. of Weeks[6] | Weekly Pay | Hours Worked[7] | Regular Hourly Rate[8] | NYLL Hourly Min. Wage | Difference in Min. Wage per Hour | Min. Wages Owed per Week | Min. Wages Owed per Period |
|---|---|---|---|---|---|---|---|---|
| 10/10/15-11/28/15 | 7 | $425 | 46.941 | $10.63 | $8.75 | ($1.88) | --- | --- |
| 11/29/15-12/31/15 | 5 | $450 | 46.941 | $11.25 | $8.75 | ($2.50) | --- | --- |
| 1/1/16-5/28/16 | 21 | $450 | 46.941 | $11.25 | $9.00 | ($2.25) | --- | --- |
| 5/29/16-8/27/16 | 13 | $475 | 46.941 | $11.88 | $9.00 | ($2.88) | --- | --- |
| 8/28/16-12/31/16 | 18 | $500 | 46.941 | $12.50 | $9.00 | ($3.50) | --- | --- |
| 1/1/17-12/31/17 | 52 | $500 | 46.941 | $12.50 | $10.50 | ($2.00) | --- | --- |
| 1/1/18-5/5/18 | 18 | $550 | 46.941 | $13.75 | $12.00 | ($1.75) | --- | --- |
| | | | | | | Total Unpaid Wages Due: | | $0.00 |

In each period, plaintiff's regular hourly rate exceeded the NYLL hourly minimum wage and he is therefore not entitled to unpaid minimum wages for those dates worked. Accordingly, the Court recommends that plaintiff should not be awarded any unpaid minimum wages.[9]

---

[6] See Spreadsheet. The Court rounded the number of weeks in each period to the nearest whole number.
[7] Although plaintiff worked 46.941 hours a week, the Court uses 40 hours a week. See fn. 4, *supra*.
[8] Plaintiff's Regular Hourly Rate = Plaintiff's Weekly Pay / 40 hours. See fn. 4, *supra*.
[9] Plaintiff's counsel states that she calculated the requested $4,942.64 in unpaid minimum wages by "dividing the amount he received per week by the sum of 40 regular hours plus 1.5 times the average overtime hours of 6.491." Dodson Decl. at 3. She also provides the Spreadsheet with plaintiff's hours based on his recollection. Neither the one-sentence explanation nor the Spreadsheet were particularly helpful to the Court. In future filings, the Court encourages plaintiff's counsel to consider using a chart such as Table A.

B. **Unpaid Overtime Wages**

Plaintiff seeks $17,232.53 in unpaid overtime wages. Plaintiff's overtime rate is one and a half times his regular hourly rate of pay. See 29 C.F.R. § 778.113(a) ("If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."); 12 N.Y.C.R.R. § 142-2.2.

As set forth in Table B, to determine any unpaid overtime wages, the Court multiplies plaintiff's regular hourly rate by 1.5 to determine plaintiff's overtime hourly rate. Then, the Court multiplies the overtime hourly rate by 6.941, the average number of overtime hours plaintiff worked per week. Dodson Decl. at 3. That figure is then multiplied by the number of weeks plaintiff worked to determine the overtime wages plaintiff is owed.

**Table B**

| Period | No. of Weeks | Weekly Pay | Regular Hourly Rate[10] | Overtime Hourly Rate[11] | Hours of Overtime per Week | Overtime Wages Owed per Week | Overtime Wages Owed to P per Period[12] |
|---|---|---|---|---|---|---|---|
| 10/10/15-11/28/15 | 7 | $425 | $10.63 | $15.94 | 6.941 | $110.64 | $774.48 |
| 11/29/15-5/28/16 | 26 | $450 | $11.25 | $16.88 | 6.941 | $117.16 | $3,046.16 |
| 5/29/16-8/27/16 | 13 | $475 | $11.88 | $17.82 | 6.941 | $123.69 | $1,607.97 |
| 8/28/16-12/31/17 | 70 | $500 | $12.50 | $18.75 | 6.941 | $130.14 | $9,109.80 |
| 1/1/18-5/5/18 | 18 | $550 | $13.75 | $20.63 | 6.941 | $143.19 | $2,577.42 |
| Total Unpaid Overtime Due: | | | | | | | $17,115.83 |

---

[10] Regular Hourly Rate = Plaintiff's Weekly Pay / 40 hours. See fn. 4, *supra*.
[11] Overtime Hourly Rate = Regular Hourly Rate * 1.5.
[12] Overtime Owed to Plaintiff for this Period = Overtime Hourly Rate * Hours of Overtime per Week * No. of Weeks.

11

Accordingly, the Court recommends that plaintiff should be awarded **$17,115.83** in unpaid overtime wages as set forth in Table B.

### C. Liquidated Damages

Plaintiff seeks liquidated damages for the entire period of his employment under the NYLL. Memo at 10–11. Liquidated damages under the NYLL are calculated as 100% of the total amount of underpayments due to the employee. NYLL § 663(1). Plaintiff may not recover liquidated damages under both the FLSA and the NYLL, but instead, should recover under whichever statute provides for a greater recovery. Rana v. Islam, 887 F.3d 118, 123, n.3 (2d Cir. 2018); Chowdhury v. Hamza Express Food Corp., 666 Fed. App'x 59, 60–61 (2d Cir. 2016) (summary order). As discussed above, plaintiff's damages are greater under the NYLL than under the FLSA and therefore, plaintiff should be awarded **$17,115.83** (comprised of $17,115.83 in unpaid overtime wages) in liquidated damages pursuant to the NYLL.

### D. Statutory Damages

Plaintiff alleges that defendants did not provide wage notices or wage statements as required under NYLL § 195(1) and NYLL § 195(3). Valerio Decl. at 2.

#### i. Wage Notices

"Beginning April 9, 2011, New York's Wage Theft Prevention Act ('WTPA') required employers to provide written wage notices 'at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer.'" Cazarez v. Atl. Farm & Food Inc., No. 15 CV 2666 (CBA) (RML), 2017 WL 3701687, at *5 (E.D.N.Y. May 31, 2017), adopted by, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) (quoting N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015)). "After February 27, 2015, employees are entitled to damages of $50.00 per work day, up to $5,000." Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS)

12

(AYS), 2018 WL 614980, at *8 (E.D.N.Y. Jan. 11, 2018), adopted by, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018) (citations omitted). Here, plaintiff alleges that defendants never provided him any wage notice for the duration of his 134 weeks of employment. Compl. ¶ 51; Valerio Decl. at 2. Accordingly, the Court should award plaintiff the statutory maximum of **$5,000.00** against defendants.

### ii. Wage Statements

New York Labor Law § 195(3) provides that "[e]very employer shall . . . furnish each employee with a statement with every payment of wages[.]" The wage statement must list "information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." Rojas v. Splendor Landscape Designs Ltd., 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (citation omitted). An employee is entitled to $250 per work day that the violation occurred, up to a maximum of $5,000. See Copper v. Cavalry Staffing, LLC, 132 F. Supp. 3d 460, 467 (E.D.N.Y. 2015) (citing NYLL § 198(1-d)). Plaintiff alleges that he did not receive any wage statements for the 134 weeks that he was employed by defendants. Compl. ¶ 52; Valerio Decl. at 2. Accordingly, the Court should award plaintiff the statutory maximum of **$5,000.00** against defendants.

### E. Pre-Judgment Interest

Plaintiff requests pre-judgment interest pursuant to the NYLL. Memo at 11–12. The "NYLL permits the award of both liquidated damages and pre-judgment interest." Fermin v. Las Delicias Peruanas Restaurants, Inc, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015). To avoid double recovery, pre-judgment interest is awarded only on the compensatory damages awarded under the NYLL, not on the liquidated damages. Id. at 49 (citing cases). Accordingly, plaintiff is entitled to pre-judgment interest on his unpaid overtime wages at a rate of 9% per year. N.Y. C.P.L.R. § 5004.

13

Where, as here, unpaid wages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. See Fermin, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award prejudgment interest[.]") (internal quotation marks and citation omitted). A common date Courts use is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed[.]" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012).

Here, the daily prejudgment interest rate on the unpaid wages and unpaid overtime wages calculated at a rate of 9% per year is $4.22.[13] The intermediate date of plaintiff's employment—between October 5, 2015 and May 3, 2018—is January 18, 2017. Dodson Decl. ¶ 18. Accordingly, it is respectfully recommended that the Court should calculate the interest award to plaintiff by multiplying the daily prejudgment interest rate, $4.22, by the number of days between January 18, 2017 and the date judgment is entered.

### F. Post-Judgment Interest

Plaintiff also requests post-judgment interest. "[P]ost-judgment interest is mandatory in any civil case where money damages are recovered." Fermin, 93 F. Supp. 3d at 53 (quoting Duffy v. Oyster Bay Indus., Inc., No. 10 Civ. 3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) adopted by, 2011 WL 2259749 (E.D.N.Y. June 2, 2011)). "[I]nterest shall be calculated from the date of the entry of judgment at [the federal] rate equal to the weekly average 1–year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a); see Herrera v. Tri-State Kitchen & Bath, Inc., No. 14 CV 1695 (ARR)

---

[13] Pre-judgment interest at an annual rate of 9% = $17,115.83 * .09 / 365 = $4.22 /day

14

(MDG), 2015 WL 1529653, at *13 (E.D.N.Y. Mar. 31, 2015) (awarding post-judgment interest in a FLSA and NYLL case). Accordingly, I recommend that plaintiff should be awarded post-judgment interest at the default federal statutory rate.

## CONCLUSION

It is respectfully recommended that plaintiff's motion for a default judgment should be granted as modified herein. The Court should award plaintiff a total of **$44,231.66** (comprised of $17,115.83 in unpaid overtime wages, $17,115.83 in liquidated damages, and $10,000.00 in statutory damages). The Court should also award plaintiff pre-judgment interest at a rate of $4.22 per day between January 18, 2017 through the entry of judgment. Furthermore, the Court should award plaintiff post-judgment interest at the default federal statutory rate on all sums awarded from the date the Clerk of the Court enters judgment until the date of payment. Plaintiff should be permitted to file a motion for attorney's fees and costs within fourteen days from the date the Court rules on this Report and Recommendation.[14] Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely

---

[14] The FLSA and the NYLL allow for a prevailing plaintiff to seek reasonable attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 198(4). A request for attorney's fees must be supported by contemporaneous time records that describe with specificity the nature of the work done, the hours expended, the attorney's hourly rate, and the dates on which the work was performed for each attorney seeking fees. Fermin, 93 F. Supp. 3d 19, 51–52. Furthermore, a request for costs must be supported by adequate, itemized documentation. Kindle v. Dejana, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018).

objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physicians' Health Plan, Inc.</u>, 293 F.3d 42 (2d Cir. 2002); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.

                                                                                                   /S/
                                                LOIS BLOOM
                                                United States Magistrate Judge

Dated: December 26, 2019
       Brooklyn, New York